## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:15CR00034-3 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SARAH LYNN BERRY,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for United States; Sarah Lynn Berry, Defendant Pro Se.*

The defendant, Sarah Lynn Berry, proceeding pro se, filed a motion seeking relief under 28 U.S.C. § 2255. The United States filed a response in opposition to the § 2255 motion. The defendant then filed a Motion to Amend, but she did not file an amended motion within the time allowed. *See* ECF No. 163. For the reasons stated, I will deny both the Motion to Amend and the § 2255 motion.

### I.

After pleading guilty, the defendant was sentenced by this court on November 15, 2016, to a total term of 412 months imprisonment, consisting of 240 months on Count Nine of the Indictment, to be followed by a term of 172 months on Count Eleven. Count Nine charged the defendant with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Count Eleven charged her with causing the death of a person through the use of a firearm in furtherance of

that conspiracy, that killing being considered murder as defined in 18 U.S.C. § 1111, in violation of 18 U.S.C. §§ 2, 924(j). Berry did not appeal her convictions or sentences.

In her § 2255 motion, the defendant asserts six grounds of ineffective assistance of counsel. In Ground One, she contends that her counsel was ineffective in failing to challenge the application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), to Count Eleven, because the predicate offense of conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c). In Ground Two, she asserts her counsel was ineffective in failing to argue improper venue because the conduct at issue in Counts Nine and Eleven took place in North Carolina and not Virginia. In Ground Three, Berry contends that her counsel was ineffective in failing to challenge the court's application of U.S. Sentencing Guidelines Manual ("USSG") § 2A1.1 (First Degree Murder) rather than USSG § 2A1.2 (Second Degree Murder). In Ground Four, she claims that her counsel inaccurately told her that she would be sentenced to no more than the mandatory minimum term of ten years imprisonment. In Ground Five, Berry asserts that her lead counsel was ineffective in failing to be present when she signed her plea agreement and pled guilty. Finally, in Ground Six, she contends her counsel was ineffective in failing to challenge my decision to deny the

government's USSG § 5K1.1 motion for downward departure based upon substantial assistance.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but

for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694.

A defendant who has pled guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that she would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the guilty plea context, a petitioner must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 371–72 (2010).

## *A. Ground One.*

Count Eleven, which charged a violation of 18 U.S.C. § 924(j), relied upon the definition of "crime of violence" set forth in § 924(c).[1] That section defines "crime of violence" as any felony that:

>    (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

>    (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

---

[1] Subsection 924(j) provides that "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm shall [be punished].

18 U.S.C. § 924(c)(3). Paragraph (A) is known as the "elements" or "force" clause, and paragraph (B) is known as the "residual" or "risk of force" clause.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause of the "crime of violence" definition in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Court applied the same reasoning to invalidate the "risk of force" clause of § 924(c)'s definition of crime of violence. Following *Davis*, an offense can only serve as a valid predicate for a § 924(c) conviction if it satisfies the elements clause, § 924(c)(3)(A).

The predicate "crime of violence" underlying Count Eleven was conspiracy to commit Hobbs Act robbery. Before the Supreme Court issued its decision in *Davis*, the Fourth Circuit ruled that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause. *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019). "This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force." *Id.* Therefore, conspiracy to commit Hobbs Act robbery could qualify as a valid predicate only under the risk of force clause. In *Davis*, the Supreme Court affirmed the Fifth Circuit's holding that conspiracy to

commit Hobbs Act robbery could no longer serve as a valid predicate offense for a § 924(c) conviction because the risk of force clause is unconstitutionally vague. *Davis*, 139 S. Ct. at 2325, 2335.

The government concedes that in the wake of *Davis*, Berry is actually innocent of Count Eleven, which incorporates § 924(c). Her predicate offense of conspiracy to commit Hobbs Act robbery is no longer a valid predicate offense for a § 924(c) conviction. However, relying on *Bousley v. United States*, 523 U.S. 614, 624 (1998), the government argues that Berry is not entitled to relief because she cannot prove that she is actually innocent of other equally serious or more serious charges that the government decided to forego in exchange for her guilty plea to Count Eleven, nor can she prove that she is actually innocent of a foregone state capital murder charge in North Carolina. These arguments necessitate a closer look at the facts and procedural history of the case.

In April and May 2012, Berry, her husband Joshua Berry, and a third codefendant named Emmanuel Foster, committed a series of armed robberies of convenience stores and movie theaters near Interstate 77 in Virginia, West Virginia, and North Carolina. Berry provided a firearm and served as the trio's getaway driver. She did not enter any of the targeted places during the robberies. On May 25, 2012, the three robbed a convenience store in Mount Airy, North Carolina. In the course of that robbery, Foster shot and killed the store's owner,

Donald Claude Arnder, using the nine-millimeter semi-automatic pistol supplied by Sarah Berry.

In prosecuting this case, the government opted not to charge Berry with at least three § 924(c) counts based on Hobbs Act robberies, for which she could have been convicted either as a coconspirator or as an aider and abettor. In exchange for her plea of guilty to Counts Nine and Eleven, the government agreed to dismiss Counts Three, Five, and Ten of the Indictment. Counts Three and Five had each charged Berry with affecting interstate commerce by robbery and threatening physical violence in furtherance of a plan to affect commerce, in violation of 18 U.S.C. § 1951 (Hobbs Act robbery). Count Ten had charged her with the use or possession of a firearm in furtherance of a crime of violence in violation of § 924(c).[2]

As a result of the robbery in Mount Airy and the killing of Arnder, Berry and her confederates were indicted by a North Carolina grand jury for capital murder, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Two weeks prior to their indictment in this federal case, the State of North Carolina gave notice that it would seek the death penalty as to all three defendants.

---

[2] Count Ten, which the government dismissed, would also be invalid following *Davis* because it, too, was based on a predicate offense of conspiracy to commit Hobbs Act robbery.

Attorney David B. Freedman represented Berry with respect to the North Carolina charges and was later appointed to represent her in this case, along with co-counsel Thomas R. Scott, Jr.  The government has submitted affidavits of both Freedman and Scott in opposition to Berry's § 2255 motion.  Freedman and Scott state that they considered the federal and state cases to be closely related and that their goal was to reach a settlement that would result in dismissal of the North Carolina charges, thereby avoiding the possibility of a death sentence.  The government in this case had decided not to pursue the death penalty against Berry or her codefendants.

The North Carolina state charges were held in abeyance pending the resolution of the charges in this federal case.  After Berry and her codefendants were sentenced in this case, the State of North Carolina voluntarily dismissed the state charges against them.

In opposition to Berry's § 2255 motion, the government submitted an affidavit of Ricky Bowman, the district attorney who prosecuted the North Carolina case against Berry and her codefendants.  Bowman declares that "[t]he convictions and the significant length of the federal sentences received by the defendants was a material factor and the DETERMINATIVE FACTOR in the State of North Carolina's decision not to pursue charges involving the murder of Donald Claude Arnder."  Resp. to Mot. to Vacate, Set Aside or Correct Sentence

Pursuant to 28 U.S.C. § 2255 Ex. 1 at 3, ECF No. 158-1. "Had the State known the sentences received by the 3 defendants could have been later reduced or shortened, the State would not have dismissed its charges." *Id.* at 4.

I addressed the potential *Johnson*-based argument with Berry and her counsel on the record before I sentenced her. There is no question that both she and her counsel were aware of the possibility that the Supreme Court might extend its *Johnson* reasoning to § 924(c), although that outcome was uncertain at the time of Berry's guilty plea and sentencing. After explaining the *Johnson* decision and related decisions to Berry, I asked her if she was "waiving and giving up any possible argument that her conviction related to Section 924(c) is invalid," and both she and her attorney expressly stated, "Yes, Your Honor." Sent. Hr'g Tr. 3, ECF No. 139.

Under the circumstances of this case, counsel's decision to advise Berry to plead guilty to Count Eleven cannot be considered an unprofessional error under *Strickland*, nor can Berry show that she was prejudiced by that decision. Had Berry rejected the government's plea offer on *Johnson* grounds, the government likely would have pursued the Hobbs Act robbery charges in Counts Three and Five and may also have asserted up to three additional § 924(c) charges with Hobbs Act robbery as their predicate crimes of violence. Unlike conspiracy to commit Hobbs Act robbery, Hobbs Act robbery itself remains a viable predicate

offense for a § 924(c) conviction under the force clause. *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019). Each additional § 924(c) conviction would have carried a consecutive mandatory minimum sentence. The addition of three more § 924(c) counts against Berry could have resulted in another 60 years of imprisonment to be served consecutively to her sentences on any other counts.

Counsel was also keenly aware that if Berry did not receive a sufficiently lengthy sentence in this case to satisfy the North Carolina prosecutors, the State in all likelihood would not have dismissed the pending capital murder charge and would have pursued a death sentence. The outcome achieved by Berry's counsel in this case was frankly the best outcome for which she could have hoped. Given these facts, Berry has failed to meet her burden under *Strickland*.

Additionally, Berry has defaulted her claim by not raising it on direct appeal. In order to excuse this default, she must either show cause and prejudice or that she is actually innocent. *Bousley*, 523 U.S. at 622. Both parties agree that she is actually innocent of Count Eleven, but the Court in *Bousley* instructed that "where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

In the years since the *Bousley* decision was issued, several circuit courts have concluded that a petitioner must demonstrate her innocence not only of

foregone charges that are *more* serious than the invalidated charge, but also of those that are *equally* serious. *See, e.g.*, *United States v. Caso*, 723 F.3d 215, 221–22 (D.C. Cir. 2013) (noting that the foregone charges at issue in *Bousley* were, in fact, as serious as the challenged offense rather than more serious); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) (reasoning that not requiring a defendant to prove his innocence of equally serious foregone charges would result in a windfall to the defendant). *See also United States v. Scruggs*, 714 F.3d 258, 266–67 (5th Cir. 2013) (assessing "'seriousness' by cumulating the statutory maximums for all of the forgone counts and all of the pleaded counts to determine the petitioner's 'maximum exposure' before and after the plea, not by comparing the highest single maximum sentence on each side").

While the Fourth Circuit has not yet considered this exact issue, it has interpreted *Bousley*'s requirement that a petitioner demonstrate her actual innocence of foregone charges. The Fourth Circuit has held that "a defendant making a claim of actual innocence after a negotiated guilty plea must show that he is factually innocent of the underlying criminal conduct," but not that "he is actually innocent of other, dissimilar charged conduct." *United States v. Adams*, 814 F.3d 178, 184 (4th Cir. 2016). It appears that the Fourth Circuit has limited *Bousley*'s requirement to foregone charges pertaining to the same instance of underlying criminal conduct, such as where the crime of conviction was a lesser

included offense of a dismissed charge. *See id.* (explaining that a defendant charged with second degree murder who pleads guilty to voluntary manslaughter would have to show his actual innocence of both voluntary manslaughter and second degree murder in order to successfully attack his guilty plea).

In this case, the criminal conduct underlying Count Eleven was not a single Hobbs Act robbery, but rather a conspiracy to commit Hobbs Act robbery. The conspiracy encompassed not only the Mount Airy robbery, but also the other robberies committed in Virginia and West Virginia. Count Eleven reads:

> 1. On or about and between April 1, 2012, and May 25, 2012 in the Western District of Virginia and elsewhere, JOSHUA ROBERT BERRY, SARAH LYNN BERRY, and EMMAUNEL [sic] WILLIAM FOSTER, as principals and aiders and abettors, in the commission of a violation of 18 U.S.C. § 924(c), as charged in Count Ten of the Indictment, caused the death of a person through the use of a firearm and that killing being considered murder, as defined in 18 U.S.C. § 1111.

Indictment 5, ECF No. 4. In turn, Count Ten reads:

> 1. On or about and between April 1, 2012, and May 25, 2012 in the Western District of Virginia and elsewhere, JOSHUA ROBERT BERRY, SARAH LYNN BERRY, and EMMAUNEL [sic] WILLIAM FOSTER, as principals and aiders and abettors, knowingly used and carried during and in relation to, and possessed in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States (namely, conspiracy to interfere with commerce by threats and violence, as charged in Count Nine), a firearm.
>
> 2. The firearm was discharged.

*Id.* The relevant foregone charges are therefore not only those charges based on the Mount Airy, North Carolina, robbery, but any foregone charges based on the conspiracy to commit Hobbs Act robbery, provided those charges are more serious than, or perhaps as serious as, the offense charged in Count Eleven, which is essentially felony murder.

The North Carolina capital murder charge is more serious than the offense to which Berry pled guilty in Count Eleven. This is so because by the time of her initial appearance in this court, the government had already decided not to pursue the death penalty in this case, although that remedy would have been available to it. The State of North Carolina, on the other hand, had already notified Berry that it would seek the death penalty on the state murder charge. It cannot seriously be disputed that a maximum penalty of death is more serious than a maximum penalty of a term of years of imprisonment, even if that term of years amounts to a life sentence.

The State of North Carolina is, of course, a separate sovereign from the United States. The decision to dismiss the state capital murder charge was not made by the United States. Nevertheless, the record demonstrates that state and federal prosecutors worked closely together on the two cases, coordinating their efforts. Berry's defense attorneys also saw the two cases as intricately connected and worked to achieve a global settlement of the charges in both cases. It is

undisputed that the State of North Carolina would not have dismissed its capital murder charge against Berry had she not been convicted of Count Eleven in this court and received what the State considered to be an appropriately lengthy sentence for the killing of Arnder. To relieve Berry of the obligation to prove her actual innocence of the North Carolina capital murder charge would result in an unjust windfall to her. In light of the facts she admitted in her plea agreement and under oath at her guilty plea hearing, Berry has not and could not prove that she is actually innocent of the dismissed North Carolina capital murder charge.

Even if *Bousley*'s requirement extends only to foregone federal charges, I find that the uncharged federal offenses that Berry escaped in exchange for her guilty plea to Count Eleven are more serious than the offense charged in Count Eleven. These foregone § 924(c) charges with predicate offenses of Hobbs Act robbery are based on the same criminal conduct underlying the conspiracy charge that forms the basis of Count Eleven — the spree of armed robberies committed by Berry and her codefendants in April and May of 2012.

Counts Three and Five of the Indictment, which were dismissed following Berry's guilty plea to Counts Nine and Eleven, each carried a maximum penalty of up to 40 years imprisonment. This maximum sentence cannot be considered equivalent to a life sentence given Berry's young age. But the three additional § 924(c) charges that the government contends it could have brought against Berry

would each have had a maximum penalty of life imprisonment and a mandatory minimum sentence, each of which would have been served consecutively to any other sentence. The fact that these charges were not included in the Indictment is of no moment. As the *Caso* court explained, "a prosecutor can forgo 'charges' either by dropping them after an indictment *or* by never bringing them at all." 723 F.3d at 219.

Because the government chose not to seek the death penalty in this case, Count Eleven carried a maximum penalty of a term of years up to life imprisonment and a mandatory minimum sentence of ten years. The uncharged § 924(c) offenses are more serious than Count Eleven because they have greater mandatory minimum sentences while each carrying the same maximum sentence of life imprisonment. Berry does not claim that she is actually innocent of the uncharged § 924(c) convictions, nor could she. As noted above, Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause, which has not been invalidated. *Mathis*, 932 F.3d at 266.

Because she cannot prove she is actually innocent of these more serious foregone offenses, nor has she established cause and prejudice to excuse her procedural default of this claim, Berry is not entitled to relief on Count One.

## B. *Ground Two.*

In Ground Two, Berry contends that her counsel was ineffective in failing to object to venue in Virginia with respect to Counts Nine and Eleven, when the robbery and use of the firearm at issue in those counts took place in North Carolina. This ground is plainly meritless. As noted above, the charges in Counts Nine and Eleven were based on the conspiracy to commit a series of armed robberies throughout Virginia, West Virginia, and North Carolina. "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued or completed." 18 U.S.C. § 3237(a). *See also United States v. Camara*, 908 F.3d 41, 48 (4th Cir. 2018) (Venue in a conspiracy case is proper in any district in which any act in furtherance of the conspiracy took place.). Counsel's decision not to object to venue in Virginia was not an unprofessional error under *Strickland*, and Berry is not entitled to relief on Ground Two.

## C. *Ground Three.*

In Ground Three, Berry contends that her counsel was ineffective in failing to challenge the court's application of USSG § 2A1.1 (First Degree Murder) rather than USSG § 2A1.2 (Second Degree Murder). First, this claim is procedurally barred because Berry failed to raise it on direct appeal and has not attempted to

show any cause for her failure to do so. Even if she had not defaulted this claim, however, Berry would not be entitled to relief on this ground.

Berry cannot show that her counsel committed an unprofessional error under *Strickland* or that she suffered any prejudice because the killing of Arnder did in fact meet the statutory definition of first degree murder. 18 U.S.C. § 1111, which is incorporated into the § 924(j) offense charged in Count Eleven, states that "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree." Berry therefore cannot meet her burden under *Strickland* as to Ground Three.

*D. Ground Four.*

In Ground Four, Berry claims that her attorneys inaccurately told her that she would not be sentenced to more than 10 years imprisonment and that had she understood otherwise, she would not have pled guilty. This claim is contradicted by her testimony under oath at her guilty plea hearing. Before accepting her plea, I asked Berry:

> Do you understand that your sentence may be different from any estimate that your lawyer may have given you? In other words, your lawyer may have suggested to you or given you some estimate of what sentence you might receive, but there are no promises in this case and it -- the decision about sentencing will be up to the Court, up to me? Do you understand that?

Guilty Plea Hr'g Tr. 31, ECF No. 138. Berry replied, "Yes, sir." *Id.*

Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted). Moreover, I find that the decision to reject the government's plea offer would not have been rational under the facts of this case. Berry has failed to show that she is entitled to relief on Ground Four.

### *E. Ground Five.*

In Ground Five, Berry contends that attorney Freedman was ineffective in failing to be present when she signed her Plea Agreement and entered her guilty plea. Berry expressly waived this claim on the record at her plea hearing. Before accepting her plea, I engaged in the following exchange with Berry:

> THE COURT: Now, Ms. Berry, Mr. Freedman is not here today. And, again, you have the right to be represented by two lawyers at any proceeding. But I -- Mr. Scott indicates to me that you are agreeable, that you wish to waive your right to have Mr. Freedman present with you today. Is that correct?
>
> DEFENDANT BERRY: Yes, sir.
>
> THE COURT: Now, has anyone tried to persuade you to do that or tell you that somehow that that was okay or you didn't have to have two lawyers or anything like that?
>
> DEFENDANT BERRY: No, sir.
>
> THE COURT: So are you telling me, of your own free will and agreement, you are agreeable to just Mr. Scott being here present with you today on this very important occasion?

DEFENDANT BERRY: Yes, sir.

THE COURT: And you understand, if you would like, if you desire to have Mr. Freedman present, we can put this matter off? In fact, we did that for your husband, Mr. Berry, because both of his lawyers could not be present here today. And I -- and I put the matter off so that both of his lawyers could be present with him. And I can do the same for you. It will not prejudice you in any way. You will not -- the Court won't be mad at you or anything like that. Do you understand that?

DEFENDANT BERRY: Yes, sir. Thank you. But I wish to proceed.

THE COURT: But knowing all of that, you wish to proceed?

DEFENDANT BERRY: Yes, sir.

Guilty Plea Hr'g Tr. at 9-10, ECF No. 138.

Moreover, Berry does not claim any prejudice as a result of Freedman's absence. Therefore, she cannot meet her burden under *Strickland*, and she is not entitled to any relief on this ground.

### *F. Ground Six.*

In her final ground, Berry argues that her counsel was ineffective in failing to challenge my denial of the government's motion for reduction of sentence on account of her substantial assistance in the prosecution. Again, Berry has shown neither an unprofessional error of counsel nor that she was prejudiced by any such error.

During Berry's guilty plea hearing, when explaining the terms of the plea agreement, the prosecutor stated,

There's a provision here that deals with substantial assistance. And it says, Even if I fully cooperate with law enforcement, the United States is under no obligation to make a motion to reduce your sentence. And that even if the United States does makes [*sic*] such a motion, that it is entirely up to the Court as to whether the Court grants the motion. And if the Court does determine to grant a reduction, the amount of the reduction would be entirely in the discretion of the Court.

Guilty Plea Hr'g Tr. 23-24, ECF No. 138. When I asked Berry whether the terms of the Plea Agreement stated by the prosecutor were the same as what she understood to be in her Plea Agreement, she answered affirmatively. *Id.* at 27. She stated that no one had made any promise to her that made her want to plead guilty. *Id.* at 28. She indicated that she understood that the court must consider her sentencing guideline range in calculating her sentence. *Id.* at 30.

The government did make a substantial assistance motion pursuant to USSG § 5K1.1, and I discussed that motion with counsel at length during her sentencing hearing. *See* Sent. Hr'g Tr. 4–7, 23–25, ECF No. 139. After hearing argument from counsel on both sides, I explained my reasons for denying the government's substantial assistance motion as follows:

The Government in this case has filed a motion for a downward departure based on the defendant's substantial assistance to the authorities, and this motion for reduction in sentence is a method by which the Government can reward those who have cooperated with them in a substantial way. And obviously it also serves to encourage others in other criminal situations to cooperate to the end that justice can be done to all who participate in criminal activity.

Under the sentencing, federal sentencing guidelines the court is encouraged to place substantial weight on the Government's valuation as to the extent of the defendant's assistance, and there are factors that I'm encouraged to consider in terms of the appropriate reduction, if any, to be given as set forth in the sentencing guidelines.

I do have the discretion to grant the Government's motion, and to reduce the sentence below the guidelines, and below the mandatory minimum sentence imposed for the reasons that I've indicated, and I fully recognize my discretion to do so.

In this case, however, I do not believe that it is appropriate to grant the Government's motion, and to reduce the defendant's sentence. The, as I indicated in my colloquy with the prosecutor, Mr. Giorno, the facts of this case indicate that while the defendant, Ms. Berry, eventually apparently agreed to assist the Government in the prosecution of others, there was substantial evidence, according to the pre-sentence report, that incriminated the defendants aside from any assistance that Ms. Berry might have given. There is no indication that Ms. Berry has suffered or will suffer any danger or risk as a result of her assistance to the Government. And as I've indicated, I doubt, even given the Government's evaluation of substantial weight, I doubt that her assistance was, in my view, sufficient to depart downwardly. Therefore, I will deny the Government's motion.

*Id.* at 23–25.

A sentencing court has discretion as to whether to grant a motion for downward departure based on a defendant's substantial assistance. USSG § 5K1.1 (stating that "the court may depart from the guidelines," not that it must); *United States v. Pearce*, 191 F.3d 488, 492 (4th Cir. 1999). Berry has not offered any argument as to whether my decision not to downwardly depart was an abuse of discretion. She seems to suggest that counsel erred in failing to challenge that decision because counsel should have preserved the issue for appeal. But Berry

waived her right to appeal in her Plea Agreement and did not file an appeal. Berry has not shown that her counsel committed any unprofessional error or that she was prejudiced by counsel's decision not to challenge my denial of the government's substantial assistance motion. Because she has not met her burden under *Strickland*, she is not entitled to relief on Ground Six.

### G. Motion to Amend.

Berry filed a pro se motion for leave to amend her § 2255 motion, stating that she wished to address the *Davis* decision. Mot. to Amend, ECF No. 162. I directed her to submit her proposed amendment within 21 days. Order, Dec. 2, 2019, ECF No. 163. Berry never filed a proposed amendment. In any event, I have addressed the *Davis* decision herein, and any amendment would be futile. I will therefore deny the Motion to Amend.

### III.

For these reasons, it is **ORDERED** that the Motion to Amend, ECF No. 162, is DENIED, and the § 2255 motion, ECF No. 116, will be denied. A separate final order will be entered.

ENTER: April 8, 2020

/s/  JAMES P. JONES
United States District Judge